You can begin when you're ready, but let me know if you want to reserve any time for rebuttal first. Yes, Your Honor. May it please the Court, my name is Michael Hageman, and I represent Appellant and Plaintiff New England Country Foods, LLC. Also present today is the President and Founder of New England Country Foods, Mr. Peter Thompson, and I'd like to reserve eight minutes for rebuttal. Okay, great. Please watch the video. We're here today on a de novo review of a motion to dismiss, and we have three grounds for reversal that we contend warrant reversal in this case. The first ground is a new ground that we could not raise with the District Court because it wasn't right at the time. And pursuant to the authority cited in our opening brief, motion for judicial notice and reply, it is appropriate to raise it at this time. And obviously, the Court can do one of two things. The Court can rule on that issue, which is issue preclusion, where the Court could remand, it'd have to reverse the judgment on dismissal, and remand for the District Court to determine the issue of issue preclusion. We believe that the issues are straightforward, purely legal, no disputed facts. Obviously, it's a motion to dismiss. We believe the Court can rule on the issue preclusion grounds. So that's our first ground. I'll circle back to the details. The second ground is kind of a combination of the Civil Code section, California Civil Code section 1668, as well as the food safety case, which interprets that section. And our third ground is a partial reversal. We believe that the District Court extended food safety much further than is permissible in dismissing the second through fifth claims. That even if what we call, I think, the errant sentence in food safety were applied, it would apply only to the first claim. So circling back to kind of fill in those three points, issue preclusion, there was, as the Court probably noticed, there was a state court case over a dispute about royalties on this barbecue sauce. And we actually sought leave to amend the cross-complaint to bring in this particular action. It was denied on the grounds that it was dissimilar and on the eve of trial. So then we filed the instant federal action. Isn't that relevant to the issue, assuming you preserve the issue preclusion issue? It arose, the other case arose in a totally different factual legal context. So how can there be issue of preclusion? Because it's the same contract. The way it was interpreted by the state court case, which was not appealed, was the exact same contract. It was the exact same issue as far as limitation of liability. What are the factual similarities between the two cases? I read the state court's opinion in your briefs at that time, you know, describing what was going on in the state court. And it seems, as Director Burkett just mentioned, they seem totally, they seem, although they may arise from the same contract, the situations are different. Well, I think it's a matter of degrees, you know. Every case is a different plaintiff's issue. So California says the issues have to be identical. The issues are identical, as it's applied here. Tell me why they're identical. So what the court found in the state court is that there was an argument that the limitation of liability clause in the contract of issue in this appeal, exact same contract, not a different contract, not a similar contract. The exact same contract. You got that. Okay. And the exact same contract, he interpreted the provisions at issue in this case and said what they mean is that they bar their limitation on ordinary negligence. And that's it. And that's also consistent with the case law. There was, that is the identical issue. Obviously, the damage is alleged, the damage is barred or potentially barred, are different of course. But I don't believe that that causes the issue to no longer be identical. I think that they are identical as to the interpretation of that contract. You could take the court's ruling, the state court's ruling, you could copy and paste it, and if you were bound to that exact ruling in this case, it would result in reversal. That's what I contend. What were the facts at issue in that case? Because I believe that under California law, it's not only looking at whether the legal questions are the same writ large, but whether the facts and arguments substantially overlapped. And I don't think that they do. Well, let me just, I'll just briefly summarize the state court case. So, Van Law Foods sued New England Country Foods and UCF for empty Sriracha bottles saying you placed a purchase order for the Sriracha sauce. We, in reliance on that, purchased empty bottles. You didn't fulfill your full purchase order, therefore we're stuck with all these empty large costs for those empty bottles. Then there was a cross-complaint in the state court case where we basically said, you didn't do your accounting right. And you actually owe us substantially more royalties. We're, you know, so we're getting, I think it was $3.50 a case. I'm off by a few cents here and there. But you owe us $3.50 a case, you shorted us by roughly 80, 90 grand, so we get attorney's fees, we get interest. So, that was the gist of the state court case. We tried to amend the cross-complaint to add the allegations of this case, which is essentially you interfered with our relationship with Trader Joe's and that caused them to terminate a 19-year relationship. So, I understand what you're saying. The damages are different, no doubt. But I don't believe that that does not mean that issue of percussion applies because I think that issue of percussion would have, otherwise, if it was the exact same claim, exact same damages, exact same everything, why would we be talking about res judicata? I have no idea. You say that it wasn't right to be raised in the district court. One of the requirements of issue of percussion is finality. The VA law appealed. Under California law. Under California law, correct. And I think that under federal law as well, too. It's, well, there's a little bit of wiggle room there. But there was no finality of the judge because it was appealed. And I think under federal law, too. I don't think it's a moot point, so I don't want to spend any time on it. But I think under federal law, it would have been premature, given that VA law was appealing the judgment, which would have encompassed the issue we're seeking issue of percussion on. So, that's why it was not right to raise at the district court level. It wasn't even really right at the time we filed our opening brief. And that's why we alluded to it. We didn't want to cause any prejudice to VA law. And that's why we filed our motion for judicial notice, I think, the same day as our reply brief. Because that's when we had the opinions back from the Court of Appeal affirming the judgment. So, that's why that issue wasn't right. That's why that was not raised and could not have been raised. In fact, the issue of percussion and registry of Dakota was raised by VA law. And we argued successfully that there's no judgment. There's no finality. And the district court agreed with that at the time. So, I can move on to the next subject. If you have any more questions on the issue of percussion, I'd be glad to answer those. Okay? No questions? I'll move on to Civil Code 1668 and food safety. So, reading through the papers, there's a clear distinction. New England Country Foods, our position, and VA law food's position is there's a very clear distinction in our positions. VA law takes the position that, under 1668, you also need a sympathetic party. A disabled child, for example, in the city of Santa Barbara. Our position is, no, that's not how you read Civil Code section 1668. 1668 says it is against public policy. And that's actually the last phrase in there. I could read it verbatim, but I don't want to spend my time on that. But what it says is, it is against public policy to waive willful and intentional acts. By itself. It doesn't matter if you have the least sympathetic party that was a party to a contract waiving intentional torts. It doesn't matter under 1668. That's where the fundamental disagreement arises between VA and New England Country Foods. And I believe it's consistent with all authority. Food safety, as you probably read in my brief, we agree with the outcome. There's just one kind of crazy sentence where they cite to Mark Burrough. Mark Burrough has a construction defect case with the construction defect statute that is essential to its holding. Mark Burrough is valid and solid law. It's for a construction case. Food safety is not a construction defect case. So it doesn't apply to food safety. And that was the only basis for food safety holding that the breach of contract can basically be released in advance. And it makes no sense. If I say, your honors, I really like this TV. I'll give you $1,000 for it. Just let me take this and I'll pay you in a week. And then I say, but you can't sue me if I don't pay you. Have I promised to pay you anything? I haven't. It's a completely illusory promise. It makes no sense. And the California Supreme Court authorities on that are fairly clear. But what's 100% clear under California Supreme Court authority is you can't waive the implied duty of good faith and fair dealing. Why would you be able to waive express contractual promises when you can't waive the implied covenant of good faith and fair dealing? Which is what we're asserting also. We have two allegations of breach. Express breach and implied breach of the covenant of good faith and fair dealing. And the California Supreme Court authorities are 100% clear. You cannot waive the implied duty. Finally, our last argument is that not all claims are barred by food safety. The district court extended food safety too far. In fact, food safety specifically said intentional torts cannot be waived pursuant to 1668. Food safety, and just to make a very, very important point, food safety was a summary judgment case in which the trial court and court of appeal found that there was no tribal issue factor of damages, that the lack of damages defeated all of food safety's claims. So everything, all of the discussions is dicta and by citing Mark Burrell, not well-reasoned dicta. With that, if most everyone... Can I say three or four? Wait a minute, four minutes. Okay. Thank you. Good morning. My name is Krista Di Mercurio and I represent Van Law Food Products. I appreciate the opportunity to be here and argue before all of you and welcome to the West Coast. I want to first start with addressing collateral estoppel just quickly on the issue of the similarity of the issues in the state court action versus the issues in the federal court action. What the appellate is really arguing is that the limitation of liability clause is essentially nullified now because the state court refused to apply it to a $35,000 unpaid royalty claim. It's nullified. It no longer exists. That's not what collateral estoppel says. I think everything else on the similarity of the issues has already been addressed in the briefs. What I want to talk about is what was emphasized in the reply and that is this distinction between offensive versus defensive collateral estoppel as well as a distinction between mutual and non-mutual collateral estoppel. Just quickly on mutual versus non-mutual. Really, there's two cases. It's daily versus... I'm speaking from your addressing as you're giving your brief the merits of this argument. You are not contending that their failure to reach the below was a waiver. I am not. Yes. I think the district court was... Because the district court said that we were premature in raising it in our motion to dismiss, it's just... We're not. I think the case... It's NBS. I think it was cited in the request for judicial notice. First, NBS court versus Gabrielson. 179 Calop 3D 1189 says that you can raise the issue for the first time on appeal. It's actually directly on point because it goes into why it could arise on appeal. It gives your honors the ability to decide that based on the record, which is why it shouldn't be remanded. I believe you're equipped to deal with that here. Talking about mutual versus non-mutual... It's a fair question of laws. Correct. It needs a remand. That's right. That's right. Talking about mutual versus non-mutual. There's a case daily versus city of San Diego. This is 223 Calop 4237. That case also cites Ruse versus Red, which is 130 Calop 4870. What those cases say, and really it's a direct quote from Ruse versus Red, is that there's really no difference between mutual versus non-mutual collateral assault. That comes up more in the arbitration setting. There's some cases that talk about where you have to have full mutuality in the arbitration setting. What Ruse versus Red says is that you don't need mutuality. What you need, it says moreover, and this is at page 452, it says moreover, because estoppel need not be mutual, it is not necessary that the earlier and later proceedings involve the identical parties or the privies. Only the party against whom the doctrine is invoked must be bound by the prior proceeding. The point there is that we're not talking about mutuality versus non-mutuality. It's the same standard. We agree same parties to both and ban law is the one who is a party to both who is sought to be bound by the prior ruling on the limitation of liability clause. So that's a non-issue. When it comes to offensive collateral estoppel versus defensive, the cases daily, Ruse versus Red, they do distinguish between the two. But both cases actually imply that there is a fairness component to this regardless of whether it's offensive versus defensive. Because the idea is that if you're talking about a $35,000 royalty claim which ban law took the position was literally thrown in at the very end. They briefed the court on that issue and kind of the argument from the other side as well. They should have known about it from discovery. But ban law did take the position that that issue was inserted to the case right before trial. It invoked a limitation of liability clause. There was no there was no discovery on that clause. There were no depositions on that clause. It just simply was not an issue until right before trial. So the fairness component there, that's the point of us referencing that motion in Limday that was denied as part of the statement of decision. Ban law took the position that it was surprised by this claim.  it asserted what it thought was a legal defense. And the court rejected that legal defense as to that claim. But both those cases that I cited, they do seem to suggest that fairness applies no matter what. And I'll wrap up on this topic in just a moment here. But this is the Roos vs. Red case again. And this is page 452. Again, it goes through the factors for collateral estoppel. And it says in addition to these factors, and especially where collateral estoppel is applied offensively, to preclude a defendant from relitigating an issue the defendant previously litigated and lost, the courts consider whether the party against whom the earlier decision is asserted had a full and fair opportunity to litigate the issue. And so again, that goes back to full and fair opportunity. Was there any incentive to vigorously defend this $35,000 royalty claim that was thrown in before trial versus a $6 million federal claim for anticipated lost profits? You bet you there's a difference in terms of fairness. There's an argument at the reply, pages 14 through 16, that sort of tries to say, well, there was incentive to vigorously defend that issue because, you know, really it was valued at more than $35,000. There's attorney's fees considerations. There's all these things, right? So maybe it was valued at $75,000, $100,000, whatever the case may be. That is a, and again, this goes to fairness, that is a far cry from a federal action seeking $6 million in anticipated lost profits due to a attempted cloning of a recipe, essentially. So, two different situations, fairness becomes critical and to say that a $35,000 royalty claim where the state court refused, sort of at the last minute, to apply a limitation of liability clause that had not otherwise been an issue in the case would somehow preclude, really, the position they're taking is it would preclude the parties from ever relying on that clause again. That violates collateral, that's not collateral estoppel. That is not the intent of it. And it really, you know, takes the bargaining power away from the parties. They agreed to this clause. It has not been struck down, not even impliedly. There was no claim for declaratory relief anywhere saying is this enforceable, is it not? Turning quickly to food safety, also want to address something in the reply and my colleague also raised it on oral argument. It does not matter and this is critical, it does not matter that that case was a summary judgment case. The factual findings that were cited in the reply, those relate 100% to a fraud and deceit claim economic loss rule. That is very clear, that discussion is that pages 645 to 646 of the food safety case and if you look at the heading from the case, taking what was cited in the reply, all those factual findings relate to fraud and deceit. When it comes to the limitation of liability clause, the court said and this is at pages 643 to 644 there is a discussion about the limitation of liability clause. It says, because the party submitted no extrinsic evidence bearing on the meaning of the clause, its interpretation is a question of law. We therefore inquire into the party's intentions as disclosed by the language of the contract. It goes on to cite to the contract and referring to it as broad and unqualified language. So, the issue of the limitation of liability clause in food safety versus in this case, legal issue, nothing extrinsic, nothing outside of the pleadings and in the food safety case, nothing outside of the contract. So, it appeals to Apples in terms of interpreting that clause. It does not matter that that was a summary judgment case. That's a classic red herring on this appeal. And then, finally, just on the other claims, I think that the district court's analysis, it was very clear that the whole point of this is not to say, well, excuse me, let me back up before I get into it. I'm sorry, I'm not following what's going on in this, but counts 2, 3, and 5 asserted various causes of inaction for intentional misconduct or for breach of fiduciary duty of loyalty. Yes? Yes. And so isn't the question whether a limitation of liability on intentional wrongs that exempts some but not all damages is permissible under Section 1668? So I will address that. The issue, and again the district court addressed it, the issue is that what, if you read the complaint, the First Amendment complaint, it's really trying to distinguish between an intentional breach of a contract versus an ordinary breach of a contract. The claim can only survive with a provision in the contract. It all emanates and literally dies if the contract doesn't exist. Then you have to look at the limitation of liability clause and whether it bars the specific type of relief sought. And the district court said this properly, maybe in hindsight that wasn't a good idea, maybe you should have carved out some section about certain egregious breaches, I don't know, but it's really just the substance of the First Amendment complaint is that my client breached this cloning provision. That's it. And really it's saying it's an intentional breach of a contract. It wasn't a negligent breach of a contract, it was an intentional one. I have not found a single case that distinguishes between, again, really an intentional breach of a contract provision versus an unintentional one. Again, they're saying it was at issue in food safety because food safety found that as a result of that clause, the bad faith and the negligence claims went away, which to me it's really one in the same as this case. They're all torts that arose out of a contract and couldn't survive without the, in our case, the cloning clause. This is the discussion within food safety that you're relying on. Sure. It's, there is a 642 towards the end of the page. Yeah, it's... Can you further conclude that the clause effectively limits food safety's liability for breaches of contractual obligations and ordinary negligence? Yes. I've seen before suggest that the clause is unconscionable or affects the public interest, but where does it encompass the notion of intentional contract? So, when I look at, let's see here, yeah, it's really, it's on page 1128 and it says, it's quoting the contract, it says, in view of this broad and unqualified language, the clause must be regarded as establishing a limitation on food safety's liability sufficient to encompass ECOSAFE's claim for breach of contract, bad faith, and negligence. So, my only point there, and then there was a fraud and deceit claim there that was treated differently for reasons that aren't at issue in our case. There's no fraud and whatever you want to call the tort claims in this action, bad faith, negligence, interference, they all emanate out of the contract. And food safety, my point is, every positive action that emanated out of that contract that had a form of damages that was barred by the    breach of contract. So, I'm going to say that you engage in a tort in addition to breach of contract, and therefore, the clause is nullified. Really quickly, just to address something about BAMLA's position, we do not claim that you have to be a disabled child in order to invoke 1668. The point of Santa Barbara being so different than the issues here is, this is a commercial setting, these are two businesses, equal bargaining power. Signing a waiver saying that if a playground or, you know, some type of public place is negligent, where the person involved had zero negotiating power, zero bargaining power, we're just saying that's what makes it distinguishable. Thank you very much. Thank you. Hopefully you have just over four minutes. Thank you. Thank you. So, I'll try to be brief so I can entertain questions if there are any. I just want to talk about all businesses, whenever there was anything, always lost profit 100% of the time. In economics, we talk about maximizing profit. That's what a business does, maximize long-term profit. So, eliminating lost profit eliminates all damages in a commercial context. And I think that's consistent with the HealthNet case that the District Court actually noted. To my perspective of the original order, there was kind of a 180 done by the District Court in the original motion dismiss. I read the original order saying, hey, you allege these facts, you survive motion dismiss. And there was heavy reliance on the HealthNet case in the original order granting the motion dismiss with leave to amend. A reply on page 21 talks about, so, it is absolutely not true that food safety did not get rid of any other claim in the reach of contract or the like claims on limitation of liability. The food safety motion. I mean, a very interesting argument about the interpretation ultimately of section 1668 and both you and your adversary are citing to appellate division, appellate decisions, why shouldn't we certify this question to the Supreme Court? Just going back, I think we covered this in our reply. I think there was a full and fair opportunity to litigate the issue for issue collusion. It sounds like this court is concerned about identical. Unfortunately, I just don't have a case squarely on point. What identical means, precisely, I believe it means the issue is identical, not every single fact of the case because that would be res judicata. So I think without citing any specific authority, I looked for authority on what does identical mean. Wasn't able to find any, to be perfectly frank. I think it's issue preclusion. The issue has to be identical. That's what I'm trying to do. I believe if you follow the statement which interpreted the paragraphs at issue, we prevail and the case is reversed. Counsel's discussion, I don't think the court is hung up on this issue. I don't have the site handy but I'm familiar with the case. Under California law there is no non-mutual issue preclusion in arbitration because the non-parties didn't agree to arbitrate. I don't see the distinction between mutual versus non-mutual offensive versus defensive being relevant here. And I think the court's questions indicate that the concern is unidentifiable whether you find it identical. I think that's it. Unless there are any questions, that exhausts my notice. Thank you. Thank you both of you for your presentations this morning. This case is submitted.
judges: PAEZ, THOMAS, Rakoff